STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MATTHEW O'BRIEN (Cal. Bar No. 261568)
BRIAN FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644/3819
    Facsimile: (213) 894-0141
    E-mail:    Matthew.O'Brien@usdoj.gov
              Brian.Faerstein@usdoj.gov

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
GARY N. DONNER
Senior Trial Attorney, Environmental Crimes Section
150 M Street, N.E.
Washington, DC 20002
Telephone:    (202) 305-0338
Facsimile:    (202) 514-8865
E-mail:        Gary.Donner@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 22-00057(A)-FMO |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT JOSE MANUEL PEREZ |
| v. | |
| JOSE MANUEL PEREZ,<br>  aka "Julio Rodriguez," and<br>STEPHANY PEREZ, | |
| Defendants. | |

    1.    This constitutes the plea agreement between JOSE MANUEL

PEREZ, also known as "Julio Rodriguez" ("defendant"), and the United

States Attorney's Office for the Central District of California (the

1  "USAO") and the United States Department of Justice, Environment and

2  Natural Resources Division, Environmental Crimes Section (the "DOJ,"

3  and, collectively with the USAO, the "United States") in the above-

4  captioned case.  This agreement is limited to the USAO and DOJ and

5  cannot bind any other federal, state, local, or foreign prosecuting,

6  enforcement, administrative, or regulatory authorities.

7                          DEFENDANT'S OBLIGATIONS

8       2.   Defendant agrees to:

9            a.   At the earliest opportunity requested by the United

10  States and provided by the Court, appear and plead guilty to counts

11  Nine, Ten, and Twelve of the superseding indictment in United States

12  v. JOSE MANUEL PEREZ et al., CR No. 22-00057(A)-FMO, which charge

13  defendant with Smuggling Goods Into the United States, in violation

14  of 18 U.S.C. § 545 (Counts Nine and Ten), and Wildlife Trafficking,

15  in violation of 16 U.S.C. §§ 3372(a)(1), 3373(d)(1)(B) (Count

16  Twelve).

17           b.   Not contest facts agreed to in this agreement.

18           c.   Abide by all agreements regarding sentencing contained

19  in this agreement.

20           d.   Appear for all court appearances, surrender as ordered

21  for service of sentence, obey all conditions of any bond, and obey

22  any other ongoing court order in this matter.

23           e.   Not commit any crime; however, offenses that would be

24  excluded for sentencing purposes under United States Sentencing

25  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

26  within the scope of this agreement.

27           f.   Be truthful at all times with the United States

28  Probation and Pretrial Services Office and the Court.

                                    2

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Abandon any and all right, title, and interest in and not seek the return of any of the animals seized by law enforcement that defendant attempted to bring or brought into or ship out of the United States during the course of the underlying investigation in this case, including (i) animals seized from a shipment intended for Spain on or about August 31, 2016, (ii) animals seized from two packages arriving from Hong Kong on or about May 2, 2018, and (iii) animals seized from defendant that he attempted to bring into the United States on or about February 25, 2022 (collectively, the "Seized Animals").  Defendant shall not assist any other individual in any effort to falsely contest the abandonment of any and all right, title, and interest in the Seized Animals.  Defendant further shall not claim that reasonable cause to seize the Seized Animals was lacking.  Defendant further agrees that abandonment of the Seized Animals shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE UNITED STATES' OBLIGATIONS</u>

3.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the superseding indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court

3

1  may consider any dismissed charges in determining the applicable

2  Sentencing Guidelines range, the propriety and extent of any

3  departure from that range, and the sentence to be imposed.

4        d.   At the time of sentencing, provided that defendant

5  demonstrates an acceptance of responsibility for the offenses up to

6  and including the time of sentencing, recommend a two-level reduction

7  in the applicable Sentencing Guidelines offense level, pursuant to

8  U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

9  additional one-level reduction if available under that section.

10                THE GOVERNMENT'S ONGOING INVESTIGATION

11      4.   Defendant acknowledges that the government has informed him

12  that he is under federal investigation for potential criminal conduct

13  relating to his suspected possession of firearms and ammunition and

14  use of controlled substances.  The parties agree that this plea

15  agreement does not affect the government's ongoing criminal

16  investigation regarding defendant's suspected possession of firearms

17  and ammunition and use of controlled substances.  Defendant

18  understands that this plea agreement has no impact whatsoever on the

19  ongoing criminal investigation and potential charges arising out of

20  that investigation.

21                      NATURE OF THE OFFENSES

22      5.   Defendant understands that for defendant to be guilty of

23  the crime charged in counts Nine and Ten, that is, Smuggling Goods

24  Into the United States, in violation of Title 18, United States Code,

25  Section 545, the following must be true: (1)(a) defendant knowingly

26  or fraudulently imported or brought merchandise into the United

27  States contrary to law, and (b) defendant knew that the importation

28  or bringing of the merchandise into the United States was contrary to

1  law; or (2)(a) merchandise had been brought into the United States

2  contrary to law, and (b) defendant received, concealed, bought, sold,

3  or facilitated the transportation, concealment, or sale of the

4  merchandise knowing that it had been brought into the United States

5  contrary to law.

6      6.   Defendant understands that for defendant to be guilty of

7  the crime charged in Count Twelve, that is, Wildlife Trafficking, in

8  violation of Title 16, United States Code, Sections 3372(a)(1),

9  3373(d)(1)(B), the following must be true: (1) defendant knew that

10 the wildlife had been transported or sold in violation of, or in a

11 manner unlawful under, United States law; (2) the market value of the

12 wildlife actually transported or sold exceeded $350; and

13 (3) defendant transported or sold the wildlife by knowingly engaging

14 in conduct that involved its sale.

15                              PENALTIES

16     7.   Defendant understands that the statutory maximum sentence

17 that the Court can impose for each violation of Title 18, United

18 States Code, Section 545, is: 20 years imprisonment; a 3-year period

19 of supervised release; a fine of $250,000 or twice the gross gain or

20 gross loss resulting from the offense, whichever is greatest; and a

21 mandatory special assessment of $100.

22     8.   Defendant understands that the statutory maximum sentence

23 that the Court can impose for a violation of Title 16, United States

24 Code, Sections 3372(a)(1), 3373(d)(1)(B), is: 5 years imprisonment; a

25 3-year period of supervised release; a fine of $250,000 or twice the

26 gross gain or gross loss resulting from the offense, whichever is

27 greatest; and a mandatory special assessment of $100.

28

9.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 45 years imprisonment; a 3-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

10.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

1    12.  Defendant understands that, if defendant is not a United
2  States citizen, the felony convictions in this case may subject
3  defendant to: removal, also known as deportation, which may, under
4  some circumstances, be mandatory; denial of citizenship; and denial
5  of admission to the United States in the future.  The Court cannot,
6  and defendant's attorney also may not be able to, advise defendant
7  fully regarding the immigration consequences of the felony
8  convictions in this case.  Defendant understands that unexpected
9  immigration consequences will not serve as grounds to withdraw
10  defendant's guilty pleas.

11                          FACTUAL BASIS

12    13.  Defendant admits that defendant is, in fact, guilty of the
13  offenses to which defendant is agreeing to plead guilty.  Defendant
14  and the United States agree to the statement of facts provided below
15  and agree that this statement of facts is sufficient to support pleas
16  of guilty to the charges described in this agreement and to establish
17  the Sentencing Guidelines factors set forth in paragraph 15 below but
18  is not meant to be a complete recitation of all facts relevant to the
19  underlying criminal conduct or all facts known to either party that
20  relate to that conduct.

21  **A.   Defendant's Smuggling Scheme**

22    Beginning no later than January 2016 and continuing through
23  February 2022, defendant and his associates smuggled and caused to be
24  smuggled wildlife into the United States from Mexico and other
25  countries without obtaining the permits required by the Convention on
26  International Trade in Endangered Species of Wild Fauna and Flora
27  ("CITES") and without declaring any wildlife imported into the United
28  States.  Defendant purchased the wildlife from suppliers

1  predominantly in Mexico and then resold the wildlife, primarily to
2  customers in the United States.  In total, defendant caused the
3  illegal smuggling and importation of at least 1,700 animals.
4      L.C. (identified as Co-conspirator #1 in the superseding
5  indictment) was one of defendant's suppliers based in Mexico.  On
6  numerous occasions, defendant and L.C. agreed to a sale of wildlife,
7  and then L.C. arranged for the wildlife to be transported from
8  locations within Mexico to Juarez, Mexico.
9      J.A.G. (identified as Co-conspirator #3 in the superseding
10 indictment) generally retrieved from the Juarez airport the wildlife
11 that defendant had purchased from L.C.  J.A.G. then delivered the
12 wildlife to A.C. (identified as Co-conspirator #2 in the superseding
13 indictment) at a prearranged place in Juarez, Mexico.  Defendant and
14 J.A.G. generally provided shipping labels to A.C., bearing addresses
15 in the United States, including addresses where defendant resided, to
16 which A.C. arranged for the wildlife to be delivered.
17     A.C. transported the wildlife in his car from Juarez, Mexico, to
18 his residence in El Paso, Texas, without obtaining the requisite
19 CITES permits, without declaring the wildlife to U.S. authorities,
20 and without transporting the wildlife through a designated port of
21 entry.  Defendant knew that A.C. did not obtain CITES permits,
22 declare the wildlife to U.S. authorities, or transport the wildlife
23 through designated ports of entry, all of which defendant knew was
24 contrary to law.  Defendant and others paid A.C. a "crossing fee" for
25 each border crossing, the amount of which depended on the number of
26 animals transported, the size of the package(s) containing the
27 animals, and the risk of being detected by the authorities.  After
28 transporting the animals into the United States, in coordination with

1  defendant, A.C. shipped the live animals to defendant in Missouri
2  and, later, Oxnard, California.

3      Defendant also imported wildlife smuggled from Hong Kong into
4  the United States, without declaring the wildlife to U.S.
5  authorities, and without the requisite CITES permits, for the purpose
6  of selling the wildlife to customers in the United States.

7      Stephany Perez (defendant's sister and co-defendant), R.G.
8  (identified as Co-conspirator #4 in the superseding indictment), and
9  A.M. (defendant's girlfriend, identified as Co-conspirator #5 in the
10 superseding indictment) assisted defendant in the purchase and sale
11 of smuggled wildlife by receiving, transporting, acquiring, and
12 shipping animals, as well as arranging payment for animals purchased
13 and receiving payment for animals sold, particularly when
14 (1) defendant was incarcerated between approximately August 25, 2016,
15 and April 9, 2018, and between approximately November 4, 2018 and
16 October 23, 2019, and (2) defendant was travelling in Mexico for
17 extended periods in 2021 and early 2022.

18      Defendant travelled from California to Mexico (sometimes alone,
19 sometimes with A.M., and sometimes with others) to acquire additional
20 live animals that had been taken from the wild so that the animals
21 could be transported into the United States, without obtaining the
22 requisite CITES permits, without declaring the wildlife to U.S.
23 authorities, and without transporting the wildlife through a
24 designated port of entry, all of which defendant knew was contrary to
25 law.

26      Defendant used an alias, "Julio Rodriguez," in order to conceal
27 his participation in the unlawful scheme, including through the use
28 of a Facebook account in the name of "Julio Rodriguez."  Defendant,

1  with assistance at various times from Stephany Perez and A.M., used
2  this Facebook account to communicate and coordinate with his
3  associates regarding their smuggling activities and to advertise and
4  sell animals that had been smuggled or were intended to be smuggled
5  from Mexico into the United States.  Among other things, defendant
6  used the Facebook account to post photos and videos that depicted the
7  animals that were collected from the wild.

8  **B.    The Smuggled Species**

9      Wildlife and plant species listed in Appendix I of CITES are
10  threatened with extinction.  Those listed in Appendix II of CITES
11  include species that are not presently threatened with extinction but
12  may become so if their trade is not regulated.  Appendix II species
13  may be allowed in trade; however, they are strictly regulated and
14  monitored.  To import an Appendix II species into the United States,
15  the exporter must obtain a valid "foreign export permit," issued by
16  the specimen's country of origin, prior to importation.  Appendix III
17  of CITES includes wildlife and plant species listed by CITES member
18  countries as being in need of international trade controls to prevent
19  unsustainable or illegal exploitation of the species.  International
20  trade in such species is allowed only on presentation of the
21  appropriate permits or certificates.  As relevant herein:

22  • *Abronia* is a genus of lizards found in Mexico and throughout
23      Central America and northeastern South America.  Almost the
24      entire genus is listed in CITES Appendix II, including *Abronia*
25      *graminea, Abronia martindelcampoi*, and *Abronia taeniata*.  Five
26      species, including *Abronia fimbriata*, are listed in CITES
27      Appendix I.

28

10

- *Terrapene nelsoni* (spotted box turtle), *Terrapene carolina mexicana* (Mexican box turtle), and *Terrapene carolina yucatana* (Yucatan box turtle) are endemic to Mexico and listed in CITES Appendix II.

- *Heloderma horridum* (Mexican beaded lizards) are found in Mexico and are listed in CITES Appendix II.

- All Crocodiles (*Crocodillus*) throughout the world are listed in CITES Appendix II.

- *Ungaliophis continentalis* (Isthmian dwarf boas) are endemic to Mexico, Guatemala, and Honduras and are listed in CITES Appendix II.

- *Platysternon megacephalum* (Big Headed turtles) are found in Asia and are listed in CITES Appendix I.

- *Sacalia quadriocellata* (four-eyed turtles), *Carettochelys insculpta* (Fly River turtles), and *Geoemyda spengleri* (Black Breasted Hill turtles) are found in Asia and are listed in CITES Appendix II.

- *Mauremys reevesii* (Reeves turtles) are found in Asia and are listed in CITES Appendix III.

C.    **Examples of Defendant's Smuggling Activities in 2018**

As part of defendant's scheme of routinely smuggling and causing to be smuggled wildlife from Mexico into the United States from 2016 into early 2022, defendant engaged in the smuggling activities in 2018 described below.  For each of these incidents, as defendant knew, A.C. transported the wildlife from Mexico into the United States without obtaining the requisite CITES permits, without declaring the wildlife to U.S. authorities, and without transporting the wildlife through a designated port of entry.

1      1. <u>April 26, 2018</u>

2      On or about April 26, 2018, L.C. (in Mexico) shipped Yucatan box

3   turtles (*Terrapene carolina yucatana*) to J.A.G. in Juarez, Mexico, so

4   that the turtles could be smuggled into the United States and shipped

5   to defendant, who had purchased the animals.  A.C. crossed into

6   Mexico to pick up the turtles in Juarez, and then crossed the turtles

7   into Texas in return for a crossing fee of approximately $350.  On or

8   about April 26, 2018, defendant sent a shipping label to A.C., which

9   A.C. used to ship the turtles to defendant's residence in Oxnard,

10  California.  The shipping label was addressed to defendant's mother.

11     2. <u>May 2 - May 9, 2018</u>

12     In late April and early May 2018, defendant arranged for two

13  packages containing smuggled wildlife that he had purchased to be

14  sent to him from Hong Kong.  The packages were addressed to

15  recipients and residences in Oxnard, California from which defendant

16  could retrieve the packages.  Both packages were intercepted by U.S.

17  law enforcement officials on or about May 2, 2018 prior to their

18  delivery to defendant.  One package contained 5 Fly River turtles, 3

19  four-eyed turtles, 3 Reeves turtles, 3 Black Breasted Hill Turtles,

20  and 2 Big Headed turtles.  The turtles were wrapped in nylon

21  stockings, and the shipping label falsely described the contents as

22  "Toys."  The second package contained 3 Fly River turtles, 3 four-

23  eyed turtles, 3 Reeves turtles, 3 Black Breasted Hill Turtles, and 2

24  Big Headed turtles.  These turtles also were wrapped in nylon

25  stockings, and the shipping label also falsely described the contents

26  as "Toys."

27     Law enforcement officials allowed the packages to be delivered

28  to defendant as part of the investigation.  After receiving the

packages, defendant sold four of the turtles (Four-eyed turtles, *Sacalia quadriocellata*) smuggled from Hong Kong to a cooperating private individual ("CPI"), along with four *Abronia* (lizards), for $2,100.  At defendant's request, the CPI sent the money to Stephany Perez's PayPal account on or about May 19, 2018.  Defendant shipped the animals to the CPI on or about May 23, 2018.

    3. May 22, 2018

     On or about May 21, 2018, L.C. told A.C. that he had sent Yucatan box turtles (*Terrapene carolina yucatana*) to Juarez for A.C. to transport across the border and ship to defendant, who had purchased them.  A.C. agreed to a crossing fee of $250.  On or about May 22, 2018, A.C. told defendant that he had picked up the turtles for defendant and transported them across the border into the United States.  The next day, defendant told A.C. that he had received the package containing the turtles.

    4. September 26, 2018, to September 27, 2018

     On or about September 25, 2018, A.C. smuggled baby crocodiles and Yucatan box turtles from Juarez to El Paso for a crossing fee of $250 (paid by L.C., who had shipped the animals to J.A.G. in Juarez). On or about September 26, 2018, A.C. smuggled another group of animals, including Yucatan box turtles, from Juarez to El Paso, for a crossing fee of $700 (paid by L.C., who had shipped the animals to J.A.G. in Juarez).  L.C. instructed A.C. that the box marked "Julio" and the seven small *Yucatana* turtles and the three bags of crocodiles were for defendant, who had purchased the animals.

     On or about September 27, 2018, defendant sent A.C. a shipping label, and the next day A.C. confirmed to defendant that he had sent

13

the shipment of crocodiles and Yucatan box turtles to Stephany Perez
in Oxnard, at defendant's request.

    5. October 7, 2018, to October 8, 2018

    On or about October 4, 2018, L.C. told A.C. that L.C. had
shipped wildlife, including spotted box turtles (*Terrapene nelsoni*),
to J.A.G. in Juarez.  L.C. said that that there were 20 *nelsoni*, 12
of which were for defendant, who had purchased the animals.  A.C.
charged L.C. $1,000 for the crossing fee.

    On or about October 7, 2018, A.C. picked up spotted box turtles
from J.A.G. in Juarez and smuggled the turtles into the United
States.  The next day, defendant sent A.C. a shipping label to use
for the turtles.  At defendant's request, A.C. used the label to send
the shipment of turtles to Stephany Perez in Oxnard, California.

    6. October 25, 2018

    On or about October 24, 2018, J.A.G. sent to A.C. a photo of 9
Mexican beaded lizards (*Heloderma*) that were to be delivered to
defendant, who had purchased the animals.  A.C. picked up the animals
from J.A.G. the next day in Juarez, and smuggled the animals into the
United States in exchange for a $200 crossing fee.  On or about
October 25, 2018, at defendant's request, A.C. shipped the lizards to
Stephany Perez in Oxnard, California.  The next day, at defendant's
request, Stephany Perez sent a payment of approximately $1,500 to
J.A.G. in Mexico.

    7. November 1, 2018

    On or about October 30, 2018, L.C. told A.C. that he was sending
two adult Mexican box turtles to J.A.G. for defendant, who had
purchased the animals.  A.C. told L.C. that he would cross the

1   animals for $150, which L.C. agreed to pay.  L.C. told A.C. that
2   defendant had paid $500 for the two turtles.
3       On or about November 1, 2018, A.C. informed defendant that he
4   had picked up the turtles from Juarez and smuggled them into the
5   United States.  Defendant sent a shipping label to A.C. to use to
6   ship the turtles to defendant.  A.C. told defendant, "The bridges are
7   getting tougher now," and defendant commented on there being more
8   inspections at the border.  A.C. said that the bridge at the border
9   crossing had been closed that morning due to law enforcement
10   activity.
11       That same day, at defendant's request, A.C. shipped the turtles
12   to Stephany Perez in Oxnard, California.  Also on that date, at
13   defendant's request, Stephany Perez sent a payment of approximately
14   $540 to L.C.'s sister in Mexico.
15       8. November 20, 2018 (Count Nine)
16       Defendant was arrested on or about November 4, 2018 and remained
17   in jail for almost another year.  He continued operating the scheme
18   from jail by speaking frequently with Stephany Perez, A.M., and other
19   family members and providing detailed instructions about purchases,
20   sales, and care of the wildlife.  In one of the first calls from
21   jail, defendant told Stephany Perez, "The business is running smooth.
22   I can run the business from in here."
23       On or about November 19, 2018, L.C. asked A.C. how much A.C.
24   would charge to cross 20 *aerolata* babies, 7 adult *Yucatana*, and 4
25   baby *Yucatana* for defendant.  L.C. and A.C. discussed that defendant
26   might be in jail.  A.C. told L.C. that the crossing fee for the
27   wildlife would be $450, and L.C. said that he sent the animals to
28   J.A.G. in Juarez.

1        On or about November 20, 2018, J.A.G. told A.C. that he had

2   received the seven Yucatan box turtles from L.C.  A.C. picked up the

3   turtles from J.A.G. in Juarez and smuggled them across the border.

4   Defendant sent a shipping label to A.C. for A.C. to use to ship the

5   turtles to defendant.  At defendant's request, A.C. shipped the

6   turtles to   Stephany Perez in Oxnard, California.  L.C. paid A.C.

7   the crossing fee.

8        On or about November 19, 2018, at defendant's request, Stephany

9   Perez sent a PayPal payment of approximately $2,866.62 to L.C.'s

10  sister in Mexico.

11       9. December 4, 2018, to December 5, 2018 (Count Ten)

12       On or about December 3, 2018, L.C. and A.C. discussed a package

13  of four *Heloderma* (Mexican beaded lizards) that L.C. had shipped to

14  J.A.G. in Juarez and that were destined for defendant, who had

15  purchased the animals.  On or about December 4, 2018, A.C. picked up

16  the lizards from J.A.G. in Juarez and smuggled them into the United

17  States.  L.C. and A.C. discussed how A.C. needed a shipping label to

18  send the lizards to defendant's address, and that A.C. did not have

19  defendant's address for security reasons.  L.C. sent A.C. an image of

20  a shipping label showing Stephany Perez's address in Oxnard,

21  California.

22       A.C. told L.C. that the crossing fee was $500, which L.C.

23  paid.  A.C. instructed L.C. to tell Stephany Perez to be careful with

24  the *Heloderma*, which were big and aggressive.  At defendant's

25  request, A.C. sent the shipment to Stephany Perez in Oxnard,

26  California.

27       On a call from jail at some point between approximately December

28  1 and 16, 2018, defendant told Stephany Perez that he owed $7,000 to

16

1  L.C., and that Stephany Perez should take photos of all four of the

2  lizards together and try to sell them to one of defendant's customers

3  for $16,000.

4      On or about December 7, 2018, at defendant's request, Stephany

5  Perez sent a PayPal payment of approximately $5,826 to L.C.'s sister

6  in Mexico.

7  **D.   The Sale of Lizards on June 22, 2021 (Count Twelve)**

8      As defendant's wildlife smuggling scheme continued into 2021, on

9  or about June 14, 2021, the CPI asked defendant if he had any

10 *Sceloporus malachiticus* (Green spiny lizards) or *Abronia fimbriata*

11 for sale.  Defendant responded that he had *Sceloporus* for $400 and a

12 pair of *Abronia fimbriata* held back from the prior year, $3,000 for

13 adults and $2,500 for juveniles.

14     On or about June 18, 2021, the CPI told defendant that he would

15 purchase the juvenile *Abronia fimbriata* for $2,500.  Defendant sent

16 the CI a link to A.M.'s Venmo account.  A law enforcement official

17 sent $2,500 to A.M.'s Venmo account.

18     On or about June 21, 2021, defendant told the CPI that he would

19 ship the package the next day.  On or about June 22, 2021, a law

20 enforcement official received defendant's package containing two

21 *Abronia fimbriata*.  As defendant knew, the two *Abronia fimbriata* that

22 defendant knowingly sold to the CPI were the offspring of adults that

23 A.C. had smuggled from Mexico and shipped to defendant contrary to

24 law, and they had a market value exceeding $350.

25 **E.   The Attempted Smuggling on February 25, 2022**

26     In 2021 and early 2022, defendant travelled to Mexico frequently

27 to illegally obtain wildlife to sell to his customers in the United

28 States.  For example, from approximately February 3, 2021 to February

25, 2022, defendant crossed into the United States from Mexico at the San Ysidro Port of Entry approximately 36 times. Defendant used the trips to Mexico not only to collect wildlife but also as a marketing opportunity. Using his "Julio Rodriguez" alias, defendant boasted of his travels by means of social media posts that he directed to his buyers, showing photographs of himself collecting reptiles from the wild in Mexico and offering those same animals for sale. Defendant also rented a house in Tijuana, Mexico to facilitate his smuggling business.

On or about February 25, 2022, at approximately 2:57 a.m., defendant entered the United States from Mexico at the San Ysidro Port of Entry as the driver and sole occupant of a pickup truck. Defendant was asked by the primary Customs and Border Protection officer if he had anything to declare and he said, falsely, "no." The primary inspector referred defendant to the secondary inspection area based on a computer alert.

In the secondary inspection area, defendant was advised that a patdown of his person would occur in the security office, while his vehicle was searched. Defendant then said that he had his pet lizards in his pockets, and that was how he transported them to and from his home. The subsequent search of defendant's person revealed small bags containing approximately 60 reptiles (57 alive and 3 dead), including approximately twenty *Abronia graminea* (Terrestrial arboreal alligator lizards), nine *Abronia taeniata* (Bromeliad arboreal alligator lizards), five *Abronia martindelcampoi* (Chilpancingo arboreal alligator lizards), and four *Ungaliophis continentalis* (Isthmian dwarf boas). As defendant knew, these

1 | animals had been taken from the wild in Mexico, and defendant
2 | intended to sell them to customers in the United States.

3 | **F.    Defendant's Flight to Mexico While on Pre-trial Release**

4 |       Defendant was indicted in this case on February 24, 2022 and
5 | arrested the next day.  He remained in custody until he was released
6 | on bond, over the government's objection, on or about May 16, 2022.

7 |       On or about June 5, 2022, without the Court's permission,
8 | defendant removed the ankle bracelet used for Court-ordered location
9 | monitoring and fled to Tijuana, Mexico.  On June 6, 2022, defendant
10 | failed to appear at a 3:00 p.m. hearing that he had requested
11 | regarding his representation in this matter.  On June 16, 2022, law
12 | enforcement officials apprehended defendant in Mexico.

13 | SENTENCING FACTORS

14 |     14.  Defendant understands that in determining defendant's
15 | sentence the Court is required to calculate the applicable Sentencing
16 | Guidelines range and to consider that range, possible departures
17 | under the Sentencing Guidelines, and the other sentencing factors set
18 | forth in 18 U.S.C. § 3553(a).  Defendant understands that the
19 | Sentencing Guidelines are advisory only, that defendant cannot have
20 | any expectation of receiving a sentence within the calculated
21 | Sentencing Guidelines range, and that after considering the
22 | Sentencing Guidelines and the other § 3553(a) factors, the Court will
23 | be free to exercise its discretion to impose any sentence it finds
24 | appropriate up to the maximum set by statute for the crimes of
25 | conviction.

26 |     15.  Defendant and the United States agree to the following
27 | applicable Sentencing Guidelines factors:

28 |

| | | | |
|---|---|---|---|
| Base Offense Level: | 6 | | U.S.S.G. § 2Q2.1(a) |
| Offense committed for pecuniary gain and commercial purpose: | +2 | | U.S.S.G. § 2Q2.1(b)(1) |

Defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, including but not limited to the specific offense characteristic relating to the fair market value of the wildlife involved in defendant's offenses and relevant conduct and adjustments relating to defendant's role in the offenses and the administration of justice.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

       a.   The right to persist in a plea of not guilty.

       b.   The right to a speedy and public trial by jury.

       c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION

19.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

20.   Defendant agrees that, provided the Court imposes a total term of imprisonment on all counts of conviction of no more than the statutory maximum, defendant gives up the right to appeal all of the

1  following: (a) the procedures and calculations used to determine and

2  impose any portion of the sentence; (b) the term of imprisonment

3  imposed by the Court; (c) the fine imposed by the Court, provided it

4  is within the statutory maximum; (d) to the extent permitted by law,

5  the constitutionality or legality of defendant's sentence, provided

6  it is within the statutory maximum; (e) the term of probation or

7  supervised release imposed by the Court, provided it is within the

8  statutory maximum; and (f) any of the following conditions of

9  probation or supervised release imposed by the Court: the conditions

10 set forth in Second Amended General Order 20-04 of this Court; the

11 drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and

12 3583(d); and the alcohol and drug use conditions authorized by 18

13 U.S.C. § 3563(b)(7).

14      21.  The United States agrees that, provided all portions of the

15 sentence are at or below the statutory maximum specified above, the

16 United States gives up its right to appeal any portion of the

17 sentence.

18                 RESULT OF WITHDRAWAL OF GUILTY PLEA

19      22.  Defendant agrees that if, after entering guilty pleas

20 pursuant to this agreement, defendant seeks to withdraw and succeeds

21 in withdrawing defendant's guilty pleas on any basis other than a

22 claim and finding that entry into this plea agreement was

23 involuntary, then (a) the United States will be relieved of all of

24 its obligations under this agreement; and (b) should the United

25 States choose to pursue any charge or any civil, administrative, or

26 regulatory action that was either dismissed or not filed as a result

27 of this agreement, then (i) any applicable statute of limitations

28 will be tolled between the date of defendant's signing of this

1   agreement and the filing commencing any such action; and

2   (ii) defendant waives and gives up all defenses based on the statute

3   of limitations, any claim of pre-indictment delay, or any speedy

4   trial claim with respect to any such action, except to the extent

5   that such defenses existed as of the date of defendant's signing this

6   agreement.

7                  RESULT OF VACATUR, REVERSAL OR SET-ASIDE

8        23.   Defendant agrees that if any count of conviction is

9   vacated, reversed, or set aside, the United States may: (a) ask the

10  Court to resentence defendant on any remaining counts of conviction,

11  with both the United States and defendant being released from any

12  stipulations regarding sentencing contained in this agreement,

13  (b) ask the Court to void the entire plea agreement and vacate

14  defendant's guilty pleas on any remaining counts of conviction, with

15  both the United States and defendant being released from all their

16  obligations under this agreement, or (c) leave defendant's remaining

17  convictions, sentence, and plea agreement intact.  Defendant agrees

18  that the choice among these three options rests in the exclusive

19  discretion of the United States.

20                     EFFECTIVE DATE OF AGREEMENT

21       24.   This agreement is effective upon signature and execution of

22  all required certifications by defendant, defendant's counsel, and an

23  Assistant United States Attorney.

24                        BREACH OF AGREEMENT

25       25.   Defendant agrees that if defendant, at any time after the

26  signature of this agreement and execution of all required

27  certifications by defendant, defendant's counsel, and an Assistant

28  United States Attorney, knowingly violates or fails to perform any of

1    defendant's obligations under this agreement ("a breach"), the United
2    States may declare this agreement breached.  All of defendant's
3    obligations are material, a single breach of this agreement is
4    sufficient for the United States to declare a breach, and defendant
5    shall not be deemed to have cured a breach without the express
6    agreement of the United States in writing.  If the United States
7    declares this agreement breached, and the Court finds such a breach
8    to have occurred, then: (a) if defendant has previously entered
9    guilty pleas pursuant to this agreement, defendant will not be able
10   to withdraw the guilty pleas, and (b) the United States will be
11   relieved of all its obligations under this agreement.

12        26.  Following the Court's finding of a knowing breach of this
13   agreement by defendant, should the United States choose to pursue any
14   charge or any civil, administrative, or regulatory action that was
15   either dismissed or not filed as a result of this agreement, then:

16        a.   Defendant agrees that any applicable statute of
17   limitations is tolled between the date of defendant's signing of this
18   agreement and the filing commencing any such action.

19        b.   Defendant waives and gives up all defenses based on
20   the statute of limitations, any claim of pre-indictment delay, or any
21   speedy trial claim with respect to any such action, except to the
22   extent that such defenses existed as of the date of defendant's
23   signing this agreement.

24        c.   Defendant agrees that: (i) any statements made by
25   defendant, under oath, at the guilty plea hearing (if such a hearing
26   occurred prior to the breach); (ii) the agreed to factual basis
27   statement in this agreement; and (iii) any evidence derived from such
28   statements, shall be admissible against defendant in any such action

24

1  against defendant, and defendant waives and gives up any claim under

2  the United States Constitution, any statute, Rule 410 of the Federal

3  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

4  Procedure, or any other federal rule, that the statements or any

5  evidence derived from the statements should be suppressed or are

6  inadmissible.

7                    COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

8                                  OFFICE NOT PARTIES

9       27.  Defendant understands that the Court and the United States

10  Probation and Pretrial Services Office are not parties to this

11  agreement and need not accept any of the United States' sentencing

12  recommendations or the parties' agreements to facts or sentencing

13  factors.

14       28.  Defendant understands that both defendant and the United

15  States are free to: (a) supplement the facts by supplying relevant

16  information to the United States Probation and Pretrial Services

17  Office and the Court, (b) correct any and all factual misstatements

18  relating to the Court's Sentencing Guidelines calculations and

19  determination of sentence, and (c) argue on appeal and collateral

20  review that the Court's Sentencing Guidelines calculations and the

21  sentence it chooses to impose are not error, although each party

22  agrees to maintain its view that the calculations in paragraph 15 are

23  consistent with the facts of this case.  While this paragraph permits

24  both the United States and defendant to submit full and complete

25  factual information to the United States Probation and Pretrial

26  Services Office and the Court, even if that factual information may

27  be viewed as inconsistent with the facts agreed to in this agreement,

28

1   this paragraph does not affect defendant's and the United States'

2   obligations not to contest the facts agreed to in this agreement.

3        29.   Defendant understands that even if the Court ignores any

4   sentencing recommendation, finds facts or reaches conclusions

5   different from those agreed to, and/or imposes any sentence up to the

6   maximum established by statute, defendant cannot, for that reason,

7   withdraw defendant's guilty pleas, and defendant will remain bound to

8   fulfill all defendant's obligations under this agreement.   Defendant

9   understands that no one -- not the prosecutor, defendant's attorney,

10  or the Court -- can make a binding prediction or promise regarding

11  the sentence defendant will receive, except that it will be within

12  the statutory maximum.

13                     NO ADDITIONAL AGREEMENTS

14       30.   Defendant understands that, except as set forth herein,

15  there are no promises, understandings, or agreements between the

16  United States and defendant or defendant's attorney, and that no

17  additional promise, understanding, or agreement may be entered into

18  unless in a writing signed by all parties or on the record in court.

19  //

20  //

21  //

22

23

24

25

26

27

28

1       PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2       31.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    STEPHANIE S. CHRISTENSEN
     Acting United States Attorney
9

10   UNITED STATES DEPARTMENT OF JUSTICE
     ENRD, ENVIRONMENTAL CRIMES SECTION
11
     TODD KIM
12   Assistant Attorney General

13   _____        August 18, 2022

14   MATTHEW O'BRIEN                           Date
     BRIAN FAERSTEIN
15   Assistant United States Attorneys
     GARY DONNER
16   Senior Trial Attorney, ECS

17   _____        August 18, 2022
18   JOSÉ MANUEL PEREZ                         Date
     Defendant
19   _____        August 18, 2022
20   CHAD PENNINGTON                           Date
     MICHAEL CITRIN
21   Attorneys for Defendant JOSE MANUEL
     PEREZ
22

23

24              CERTIFICATION OF DEFENDANT

25      I have read this agreement in its entirety.  I have had enough

26   time to review and consider this agreement, and I have carefully and

27   thoroughly discussed every part of it with my attorney.  I understand

28   the terms of this agreement, and I voluntarily agree to those terms.

                              27

1  I have discussed the evidence with my attorney, and my attorney has

2  advised me of my rights, of possible pretrial motions that might be

3  filed, of possible defenses that might be asserted either prior to or

4  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

5  of relevant Sentencing Guidelines provisions, and of the consequences

6  of entering into this agreement.  No promises, inducements, or

7  representations of any kind have been made to me other than those

8  contained in this agreement.  No one has threatened or forced me in

9  any way to enter into this agreement.  I am satisfied with the

10 representation of my attorney in this matter, and I am pleading

11 guilty because I am guilty of the charges and wish to take advantage

12 of the promises set forth in this agreement, and not for any other

13 reason.

14 _____     8-18-22

15 JOSE MANUEL PEREZ                                  Date
   Defendant

16

17

18                 CERTIFICATION OF DEFENDANT'S ATTORNEY

19     I am JOSE MANUEL PEREZ's attorney.  I have carefully and

20 thoroughly discussed every part of this agreement with my client.

21 Further, I have fully advised my client of his rights, of possible

22 pretrial motions that might be filed, of possible defenses that might

23 be asserted either prior to or at trial, of the sentencing factors

24 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

25 provisions, and of the consequences of entering into this agreement.

26 To my knowledge: no promises, inducements, or representations of any

27 kind have been made to my client other than those contained in this

28 agreement; no one has threatened or forced my client in any way to

                                28

1   enter into this agreement; my client's decision to enter into this

2   agreement is an informed and voluntary one; and the factual basis set

3   forth in this agreement is sufficient to support my client's entry of

4   guilty pleas pursuant to this agreement.

5   _____                    August 18, 2022
                                                          _____
6   CHAD PENNINGTON                                       Date
    MICHAEL CITRIN
7   Attorneys for Defendant JOSE MANUEL
    PEREZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29